May it please the Court, my name is Jean Hobler. I am representing Appellant Earl Butler. I would like to reserve two minutes for rebuttal. Two? Two minutes. Okay, thank you. I think that the case before the Court this morning is a case of essentially what is first impression in the Ninth Circuit and may, in fact, be first impression across the country. We have a case here in which a prisoner has brought an ADA claim to a federal court, and that claim has been dismissed on the basis that he did not name the individual defendants in his initial grievance. I think what distinguishes this case from the cases that have previously been decided by the courts and the cases that have been cited to this court is that this is not a case in which there is a specific individual causing harm to our – Can I just ask you a question, just to clear this up while you're proceeding, because this might be important. Now, there were originally – it was sought general and punitive damages. What's the status of the punitive damages? As far as I know, all of the damages are still at issue. Well, I guess in addressing this on your argument as to the general damages and the punitive damages, it seems to me that punitive damages require a level of conduct that generally – that's different than the general damages. And so I'm a little more troubled by how individuals would be on notice of what behavior places them at risk on punitive damages. Well, I can understand that, Your Honor. I think the issue that is before the court is whether or not Mr. Butler exhausted his administrative remedies such that he can state a claim in federal court. And the district court said that he could not because he had not named these individuals. It did not get to the level of whether or not punitive damages were appropriately stated. I think that if this Court remanded that that might be an issue that was addressed in the trial court, whether or not he could state a claim for punitive damages. So you're saying that summary judgment would be adequate on that issue? Is that what – I'm saying that Mr. Butler has been put out of court entirely, and I think the issue that you're addressing is whether or not he can get – whether or not he's entitled to all of the damages he has requested. But I think that exhaustion requires that you exhaust a process, not that you seek a particular remedy and exhaust that remedy. And so I think the issue of what remedies Mr. Butler may be entitled to is something that can and should be addressed by the trial court if this – if this Court reverses the trial court's dismissal. Well, isn't part of exhaustion, though, the purpose to put people on notice of what they have to defend against? In terms of the Prison Litigation Reform Act, the actual purpose is to put the prison system on notice of problems within the system. There is nothing about the Prison Litigation Reform Act that is designed to address specific individuals in terms of whether or not they may be sued in federal court. It's a matter of putting the prison system on notice and allowing it to correct the problems before it reaches federal court. Well, how are they on notice of what the punitive – you know, what sets forth the punitive damages? Is that – was that adequately exhausted? Well, Your Honor, I think if you look at Booth v. Turner, the United States Supreme Court decision on the Prison Litigation Reform Act, it states very clearly that one does not exhaust remedies. It does – it's irrelevant whether a prisoner asks for a specific remedy in the administrative process. The issue is whether or not he outlined what his complaint is. And that's how you exhaust the process. The remedies are a completely separate issue. So here – I mean, there's no doubt that he went through all of the levels. That's correct. So it's just naming the individuals. Yes, Your Honor. Did – when he was going through the levels, did he have anyone named? No, Your Honor. His claim at all levels was that he was being deprived of his rights under the Americans with Disabilities Act, that he could not perform his everyday functions. He did mention custody staff and health care staff, but he did not name any specific individual, which I think is appropriate in this instance because he is grieving about a prison-wide problem. This is not a specific individual. There is somebody making these policy decisions about what the ADA requires within the prison system, and Mr. Butler doesn't know who that is. Okay, go ahead. I'm sorry. That's okay. And that was the distinction that I think distinguishes this case from the other cases that have been cited to this court. In most, if not all of the other cases, the complaint is that a specific individual beat a prisoner or observed the beating of a prisoner and did nothing about it. And the courts have consistently found where the prisoner knew the individual who caused the harm or knew that there were other individuals present not intervening, then absolutely they have to identify those individuals or at least state in their complaint other prison guards watched and did nothing. This is not that case. Well, that's a different activity. I mean watching and doing nothing as opposed to beating someone. Right. But the distinction there is that the prisoner is aware that there are others watching and not intervening. And in most of the cases that have been cited to this court, the reason the prisoner's claims failed for lack of naming specific defendants is because the prisoner either knew the identity of the defendants or knew that there were specific individuals watching and depriving them of their rights by not intervening in a violation of the constitutional rights of that prisoner. In this case, we are talking about a policy or a prison-wide policy and not about any specific individual who was – that Mr. Butler was in contact with who was making any determination of whether or not he could appropriately obtain accommodations under the ADA. Would it make a difference if he knew that some of the people that were responsible as to oppose, that he just doesn't know, he knows he's got a problem and he doesn't know who's – would that make a difference? I think it would, Your Honor. And I think if you look at Brown v. Sykes, I think that what that case states is a rule of reasonableness. The prisoner must state what he knows or reasonably should have known at the time he initiated the complaint. If Mr. Butler knew or reasonably should have known who was making these policy decisions, then perhaps he should have named them. But the facts of this case indicate that Mr. Butler did not know and still does not know whether or not the individuals he's named are the ones who are ultimately responsible or if it's somebody else. Well, is any of the fact that he doesn't know inherent to his disability? I think that that's part of it, Your Honor. I think that – I think that the standard could be the same for every prisoner, but one of the factual details that you could look at is that Mr. Butler does not have resource to the – because he simply can't read policy manuals. He cannot – if there is an organizational chart up at the prison indicating who is in charge of ADA claims, Mr. Butler can't read that. And his basic underlying claim is that he's not being given assistance by the prison so that he can read posted memorandums, so that he can read correspondence, so he can have access to the law library and to legal services, so that he can go to and from the dining hall. All of these things are essentially adding up to demonstrate that Mr. Butler reasonably could not know who is responsible for the harm that he is complaining of. If the Court has no further questions at this time, I'd like to reserve my time for rebuttal. There appear to be no further questions. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Jonathan Wolfe. I'm an attorney with the California Attorney General's Office and represent the defendant appellees. The defendant appellees were the reviewing staff of Mr. Butler's inmate appeal. They were neither custody staff nor health care staff. In general, an inmate, when he is allegedly wronged, knows the identity of the individuals who wronged him. Well, what about the fact here that he's blind and what counsel for the appellant has stated? I mean, he does have less resources just inherently available to him to ascertain, you know, who are the people that are perpetrating what he alleges to be not complying with his ADA needs. I think it's, first of all, important to recognize that the Department of Corrections is under federal court mandate under the Armstrong v. Schwarzenegger case that controls all disabilities within the prisons. These inmates are protected and looked out for through their class counsel in those cases. In this case, under the exhaustion rule, the inmate is required to name those individuals who wronged him. In this case. Is that a requirement under the PLRA or under the Armstrong decree? It's one of the purposes under the Prison Litigation Reform Act, Your Honor. You said it was a requirement. My question is, is it a requirement under the act or under the decree because you mentioned this Armstrong decree? Let me clarify this. I believe defendants submit it's under the Prison Litigation Reform Act, not under the Armstrong decree. No, but the requirement is what? To name individual defendants? Defendants submit that it is to name individual defendants, Your Honor. No case that so holds, is there? The Sixth Circuit case of Curry does state that defendants need to be named in the inmate appeal. And in this case, when you look at this case, it is quite clear that this is. Is Curry the one where the guy was watching the beating?  That's correct, Your Honor. All right, but isn't that really distinguishable from this case in the sense that obviously, you know, using excessive force on an inmate is one thing, the person that actually does that. And the person that watches and doesn't stop it, that's another type of behavior. That's correct, and it is distinguishable, Your Honor, absolutely. But what the defendants are submitting is that an inmate needs to put the correction officials on notice and give them the opportunity to correct the problems internally before a federal lawsuit is filed. In this case, Mr. Butler knew the names of these four individuals before filing suit. To correct the problem internally doesn't require the individual to be named, just as long as, you know, the problem and the incident is brought to the attention of the prison officials. Isn't that sufficient? Correction of the problem? In this case, these four defendants had no idea that they were going to be sued.  No, no, no, we're talking about correcting the problem, not whether they had an idea that they're going to be sued. You said the purpose is so they can correct the problem. In order to correct the problem, is it necessary for the prison officials to know the names of the individuals involved? In other words, couldn't they conduct an investigation to find out? Defendants submit that it is necessary to know the names because, in this case, Mr. Butler is specifically suing these four defendants for discriminating against him. The prison, if that was such the case, needed to know that so they can investigate these claims against these four defendants. What did they do? Did they discriminate against him in reviewing his inmate appeal? Did they fail? Well, isn't the gist of it that he wanted an inmate assistant or something to help him because he was blind and the prison basically said, no, the way that we're going to accommodate your disability is call us when you need something and we'll have staff come and deal with it. And he said, well, the staff's too busy and they don't have time to do that. I need an inmate assistant. That was the original request in his inmate appeal, correct, Your Honor. And then that inmate appeal went through the four stages of the review and these four defendants were the ones who were involved in that review. They were neither health care nor custody staff. They were not the ones responsible for making the specific changes that Mr. Butler was requiring. In addition, while he may have exhausted some of his ADA issues in his second amended complaint, in his inmate appeal, that second amended complaint is much broader than that. The defendants were not on notice that he did not have braille reading programs, he did not have legal assistance, he did not have rehabilitation programs, or even that he slipped and fell in the prison because of a lack of railings. They did not have notice about all those things. Mr. Butler failed to exhaust his inmate appeal. Well, that wasn't the issue. You know, there are a number of circuits that have decided this, contrary to what you maintain. And just let me draw your attention to the Fifth Circuit, a circuit that is not notably liberal. It says the primary purpose is to alert prison officials to a problem, not to provide personal notice to a particular official. That's the Johnson case, 2004. Are you familiar with it? Correct, Your Honor. What do you say to that? Should we say that the Fifth Circuit is wrong? I believe that case goes on to further say that individuals need to be named in the inmate appeal if, but at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. And for many types of problems, this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem. I believe the Fifth Circuit case is in conformity with what we are asking this Court today. And in those exceptional circumstances when an inmate does not know the identity of those who have wronged him, defendants submit that the inmate must provide as much information as he reasonably can to put the prison on notice of wrongs committed by individuals within the prison. That's the request that the defendants make today, Your Honors. If there are no further questions, I will submit at this time and request that this Court affirm the lower court's decision. There don't appear to be further questions. Thank you, Counsel. Thank you. In listening to argument, I'm struck by the similarities between what myself and Mr. Wolf are stating. In fact, what the prisoner reasonably knows or reasonably is aware of when he initiates the complaint, I think that's a reasonable standard. I think the Fifth Circuit identified that in Johnson and said that under some circumstances, that's generally going to require that you name names. This is not one of those circumstances. I think that Mr. Wolf's assertion that the prison litigation ---- Would you agree that this is pretty, it's a pretty fact-intensive inquiry that the Court's going to be making? I mean, sometimes you have to name names, sometimes you don't have to name names. And I think that's what the rule is. Sometimes you do and sometimes you don't. And it depends on what's reasonably available to you when you initiate your complaint. What about what counsel for the defendants stated in terms of the things about falling? There were other things that I think are in the second amended complaint or something along those lines that don't appear to have been exhausted. Well, Your Honor ---- How do you address that? There are two things that I would say to that. One is that issue exhaustion is not required under the Prison Litigation Reform Act. And if you look under the authority in Sims v. Epfel, it's a United States Supreme Court case. Issue exhaustion is either a creature of statute or a creature of administrative regulations. And no statute or regulation requires issue exhaustion in this instance. The California Code of Regulations governing this exhaustion process is included with Mr. Butler's opening brief, if the Court wishes to review that. Again, in Strong v. David, that's a Seventh Circuit case, the Court examined the same issue and said in the absence of the administrative rule book stating otherwise, issue exhaustion is not required. But I would state, in fact, that Mr. Butler did put the prison on notice that he could not go about his daily activities. He gave in his original complaint, he said that he could not do ---- he could not perform all of his everyday functions such as getting to and from the dining hall, and he gave a brief list of some other examples. When he got to the second level appeal, he got into a significant amount more detail in response to the reasons his initial appeal had been denied. In the third level appeal, the director's level appeal, he went into further detail, including about the railings, because one of the reasons his appeals were denied was because they said that the railings could help him get around. And, in fact, Mr. Butler responded that the railings led him into walls and caused him to break his tooth and fall and injure his hip on a, I think it was a water fountain that was in his way. So I think that, in fact, the prison system was on notice and had the opportunity to correct these problems before they got to federal court. All right. Thank you. This matter will stand. Oh, did you have a question? No, I just wanted to comment that, Ms. Ogler, we appreciate your highly compensated representation of the petition. It's very helpful to the court. Thank you. I'd like to thank the court, actually, for the opportunity to participate in the pro bono program, and also Mr. Wolf has been very professional and courteous through this. Thank you. All right. For those of you, we appreciate both of your arguments here today. And for those of you that may not be aware, on occasion, I mean, we do have people that represent individuals pro bono, and it obviously facilitates the argument for the court. Thank you. This matter will be submitted at this point. All right. We would call the following matter of Notosh v. Ashcroft.
judges: Noonan, Tashima, Callahan